UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HELMUT HORST MAUER,

        Petitioner,

v.

STATE OF MINNESOTA,

        Respondent.

Civil No. 08-4996 (RHK/JJG)

**REPORT AND RECOMMENDATION**

Attorney William Gatton, 247 Third Avenue South, Minneapolis, Minnesota, 55415, and Attorney Michael McGlennen, 286 Commerce at the Crossings, 250 Second Avenue South, Minneapolis, Minnesota, 55401, for Petitioner.

Peter R. Marker, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota, 55101, for Respondent.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Helmut Horst Mauer for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response, (Docket Nos. 13-16), contending that the petition should be dismissed, and Petitioner subsequently filed a "Reply" to that response, (Docket No. 20). The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

I.    **BACKGROUND**

There is little dispute about the elemental facts of this case. Sometime prior to May 2003, federal postal inspectors uncovered an enterprise known "C.R.T.," which was

distributing child pornography. The postal inspectors found Petitioner's name in C.R.T.'s customer records, and discovered that he had purchased some child pornography from C.R.T. in 1998. That information prompted the postal inspectors to send Petitioner a solicitation to order more child pornography. The solicitation offered videos showing sex acts being performed by minors, and included specific references to a 12-year-old, pre-teens, young girls 11-13 years old, and other performers from 9 to 14 years old. Petitioner responded to the solicitation by ordering four compact discs, for which he paid a total of $515.00 in cash. He also requested more information about an option to buy a custom-made video, in which a 13 year old girl would act and pose pursuant to his own personal instructions.

When the pornographic compact discs were delivered to Petitioner at his business address, he accepted them. Immediately thereafter, law enforcement authorities entered the building, and found that Petitioner had opened the compact discs, but had not yet viewed them. Petitioner was charged with four counts of violating Minn.Stat. § 617.247, subd. 4(a), which makes it a crime for a person to possess child pornography, "knowing or with reason to know its content and character."

Petitioner pled not guilty, and elected to stand trial before a judge of the state district court for Hennepin County, Minnesota. At trial, Petitioner stipulated that some of the individuals shown in the videos he had ordered were, in fact, minors, and that the videos included images that met the statutory definition of child pornography. Petitioner testified that he thought the individuals in the videos would be over the age of 18, but he acknowledged that some of them could have been as young as 9 years old.

Based on the evidence introduced at Petitioner's trial, the judge found that Petitioner

had reason to know that there would be minors in the videos he had ordered. The judge also rejected Petitioner's entrapment defense. Petitioner was found guilty of three counts of possession of child pornography, in violation of Minn.Stat. § 617.247, subd. 4(a). (The trial judge's "Findings of Fact Essential to the Verdict" are included in the present record as Respondent's Appendix, [Docket No. 16], Appendix 7.)[1]

Following his conviction, Petitioner filed a direct appeal in the Minnesota Court of Appeals. His appeal was stayed while he pursued a post-conviction motion, in which he challenged the constitutionality of the statute under which he was convicted. In the post-conviction motion, Petitioner argued that the statute at issue, Minn.Stat. § 617.247, subd. 4(a), violates the First Amendment, because the statutory phrase "with reason to know" allows for a conviction based on evidence that the defendant _negligently_ failed to realize he possessed child pornography. The trial court denied Petitioner's post-conviction motion, and Petitioner appealed that ruling as part of his direct appeal.

The Minnesota Court of Appeals acknowledged that the statutory phrase "with reason to know" was constitutionally suspect, in light of prior decisions by the United States Supreme Court, including New York v. Ferber, 458 U.S. 747 (1982), and United States v. X-Citement Video, Inc., 513 U.S. 64 (1994). The Court of Appeals explained that –

> "To protect free expression, criminal child-pornography laws must... include 'some element of scienter on the part of the defendant...' [quoting Ferber, 458 U.S. at 765]. A child-pornography statute 'completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts...' [quoting X-Citement Video, Inc., 513 U.S. at 78]."

---

[1] The record includes little information about Petitioner's sentence. As far as the Court can tell, he was sentenced to five years on probation. (See Petition, [Docket No. 1], p. 1, § 3; Petitioner's memorandum regarding custody status, [Docket No. 7]; "Hennepin County Register of Actions," Respondent's Appendix , [Docket No. 16], Appendix 1.) Petitioner's sentence is not at issue here; he is presently challenging only his conviction.

3

State v. Mauer, 726 N.W.2d 810, 813 (Minn.App. 2007) (hereafter "Mauer I").

The State Court of Appeals also acknowledged, (at least implicitly), that <u>if</u> the statutory phrase "with reason to know" established a standard of culpability synonymous with mere negligence, then the degree of scienter required for conviction under Minn.Stat. § 617.247, subd. 4(a), could be constitutionally inadequate. Id. However, the Court immediately rejected that possibility, ruling that: "As we interpret the statute,... the requirement of 'knowing or with reason to know' imposes a scienter requirement that is more demanding than a civil – or a criminal – negligence standard." Id. at 813-14. The Court went on to explain that "[w]e... interpret 'reason to know' as used in this particular statute to require a possessor to be '<u>in some manner aware</u>' that the performer [in a pornographic video] is a child." Id. at 814 (emphasis added). Thus, under the Court of Appeals' interpretation of Section 617.247, subd. 4(a), a person cannot be convicted of violating the statute unless he was "in some manner aware" that an actual minor was depicted in some pornographic material that he possessed.

After clarifying the scienter standard of Section 617.247, subd. 4(a), the Minnesota Court of Appeals next considered whether Petitioner's conviction could be upheld in light of the new interpretation of the statute. Id. at 815. The Court explained its resolution of this issue as follows:

> "Under the circumstances, [Petitioner] had fair warning that his conduct was criminal. The district court concluded that [Petitioner] had 'reason to know' that the performers were minors. Although the district court did not use the words 'in some manner aware,' the district court made extensive findings of fact. Those findings demonstrate that [Petitioner] undoubtedly was in some manner aware of the age of the performers. [Petitioner's] conviction is therefore affirmed."

Id. at 816.

4

After the Minnesota Court of Appeals upheld Petitioner's conviction, he sought further review in the Minnesota Supreme Court. Petitioner presented two arguments in his application for further review:

(1) that the new scienter requirement established by the Court of Appeals' decision, (i.e., the "in some manner aware" standard), was constitutionally inadequate; and

(2) that any judicial clarification of the statutory language would effectively alter the elements of the offense, which would necessitate a new trial to determine whether the State could prove all of the newly-established elements of the offense.[2]

The Minnesota Supreme Court agreed to hear Petitioner's case, and later filed an opinion that modified and superceded the earlier decision of the State Court of Appeals. State v. Mauer, 741 N.W.2d 107 (Minn. 2007) (hereafter "Mauer II"). The Supreme Court agreed with the Court of Appeals' initial determination, namely that –

> "[i]n order to satisfy the First Amendment, the demonstration of a child pornography possessor's scienter requires proof of some subjective awareness, not just proof that the possessor was objectively negligent in failing to know that a performer in the work was a minor."

Id. at 110.

---

[2] A copy of Petitioner's application for further review is included in the present record as an attachment to Petitioner's Reply. (Docket No. 20-2.) The "Statement of Legal Issues" section of that application describes the two issues presented to the Minnesota Supreme Court as follows:

"1. Does Minn. Stat. § 617.247, Subd. 4(a) violate the First Amendment by failing to require knowledge of the minority of the performers as an element of the offense?...

2. Does due process require that Petitioner's conviction be reversed and the case remanded for a new trial, since his conviction was not based upon a finding that the State had proved each of the elements of the offense as those elements were subsequently construed?"

However, the Supreme Court's interpretation of the statutory scienter requirement was somewhat different from the Court of Appeals'. The higher court declined to adopt the lower court's "in some manner aware" standard, and instead described the statutory scienter requirement this way:

> "[W]e hold that, under Minn.Stat. § 617.247, subd. 4(a), a possessor of child pornography has 'reason to know' that a pornographic work involves a minor where the possessor is <u>subjectively aware of a 'substantial and unjustifiable risk' that the work involves a minor</u>."

Id. at 115 (emphasis added).

Having determined how the statutory "reason to know" language should be construed to ensure the statute's constitutionality, the Supreme Court turned to Petitioner's second argument, and considered whether the trial judge would have found Petitioner guilty under the newly-narrowed construction of the statute. The Court decided that it could not fully discern whether the trial judge would have found that Petitioner "was subjectively aware of a substantial and unjustifiable risk that the videos would involve children." Id. at 816. Therefore, the case was remanded to the trial judge, so he could review the evidence presented at trial, and determine whether that evidence would support a guilty verdict under the Supreme Court's construction of the statute. The Court summarized its final ruling as follows:

> "Because we cannot be certain that the district court's findings of fact and conclusions of law would support [Petitioner's] conviction under our narrowing construction of 'reason to know,' we conclude that the district court is in the best position to review the record and reach a conclusion as to whether [Petitioner] was subjectively aware of a substantial and unjustifiable risk that the videos he ordered from C.R.T. would involve minors."

Id.

---

("Petition For Review Of Decision Of Court Of Appeals," [Docket No. 20-2], p. 2.)

On remand, the trial court judge reviewed the original trial court record, and then entered a new memorandum and order, dated March 24, 2008. (A copy of that memorandum and order, [hereafter "Post-remand Order"], is included in the current record in Respondent's Appendix, [Docket No. 16], Appendix 2.) The trial judge concluded that Petitioner "was subjectively aware of a substantial and unjustifiable risk that the pornographic works he ordered in this case involved actual minors." (Post-remand Order, p. 1.) Therefore, Petitioner's original three-count conviction was upheld under the Minnesota Supreme Court's construction of Minn. Stat. § 617.247, subd. 4(a). (Id.)

In the Post-remand Order, the trial judge carefully explained why the evidence presented at Petitioner's trial proved that Petitioner was subjectively aware of a substantial and unjustifiable risk that actual minors were shown in the pornographic videos that he ordered and possessed. The judge pointed out that the solicitation materials that prompted Petitioner's order expressly stated that the videos would depict children between 9 and 14 years of age, and "[t]he risk that the final product would involve actual minors, as advertised, was therefore substantial." (Id., p. 3.)

The judge also pointed out that:

"[Petitioner] admitted that he had previously ordered films from the same company in 1998; that the earlier films involved actual minors; and that the descriptions of the current and former films were similar. These admissions prove that, based on his personal history with films from this production company, [Petitioner] was subjectively aware that this production company had a history of using actual minors, rather than young-looking adults portraying minors. [Petitioner] was therefore subjectively aware that when he ordered the advertised products, he would likely receive pornographic work involving actual minors."

(Id., pp. 4-5.)

7

Thus, the trial judge concluded that:

> "By ordering films portraying young people engaged in sex acts, with actors advertised as being between the ages of nine and fourteen, and based on his personal history of receiving films from this production company, [Petitioner] knowingly took a substantial and unjustifiable risk that the actors in the films at issue in this case would be actual minors."

(Id., p. 5.)

Petitioner did not challenge the Post-remand Order in the state appellate courts. However, several months after that order was entered, he filed his current federal habeas corpus petition.

Petitioner is <u>not</u> presently challenging the constitutionality of the statute under which he was convicted, or the manner in which the Minnesota Supreme Court construed the statute to ensure its constitutionality. Instead, Petitioner is now claiming that the Minnesota Supreme Court deprived him of his constitutional right to due process, by remanding the case to the trial judge for further review of the original trial court record. According to Petitioner, the State Supreme Court should have voided and vacated his conviction, and remanded the case for a full new trial.

Petitioner has summarized his current habeas corpus claim as follows:

> "Petitioner was denied due process when his conviction was not reversed and the case remanded for a new trial, since it was unclear whether his conviction was based upon a finding by the trial court that the state had proved each element of the offense as construed by the Minnesota Supreme Court. Moreover, the action of the Minnesota Supreme Court remanding the case to the district court for review of its findings on the record is insufficient to satisfy the demands of due process, since a review on the record cannot take the place of a trial properly conducted under the correct standard of law. For these reasons petitioner's conviction should be reversed and the case remanded for a new trial."

(Petitioner's Memorandum In Support Of Petition For Writ Of Habeas Corpus, [Docket No. 2], p. 7.)

8

Respondent contends that this action should be dismissed because (a) Petitioner failed to exhaust all of his available state court remedies before filing this action, and (b) Petitioner's current habeas claim is, in any event, unsustainable on the merits. For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be denied on the merits.

## II. EXHAUSTION OF STATE COURT REMEDIES

Respondent initially argues that Petitioner failed to exhaust his state court remedies, as required by 28 U.S.C. § 2254(b), because he did not ask the Minnesota appellate courts to review the trial judge's Post-remand Order. Petitioner disagrees, contending that his current habeas corpus claim was fairly presented to the Minnesota Supreme Court in his petition for further review in his direct appeal. (Petitioner's Reply, [Docket No. 20], pp. 2-3.)

Normally, of course, a federal court must be satisfied that a habeas petitioner has properly exhausted his state court remedies for all of his claims before considering those claims on the merits. However, "judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) (en banc), cert. denied, 528 U.S. 846 (1999). See also 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) ("[s]ince we find the issue can be easily resolved on the merits, we need not delve into all of [the petitioner's] excuses for his procedural default"), cert. denied, 531 U.S. 886 (2000); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir.) (confirming that procedural default is not a jurisdictional bar to review of a habeas claim,

and addressing petitioner's apparently defaulted claim on the merits "in the interest of judicial economy"), cert. denied, 549 U.S. 1034 (2006).

In this case, both parties have presented reasonable and persuasive arguments in support of their respective positions on the issue of whether Petitioner has exhausted his state court remedies. Respondent has correctly pointed out that the Minnesota appellate courts have never been asked to review the trial judge's Post-remand Order, which was the final adjudication of Petitioner's guilt. However, Petitioner has correctly pointed out that he did present a due process claim for a new trial in his petition for further review in the Minnesota Supreme Court. Therefore, the claim raised in the present habeas petition arguably was exhausted on direct appeal.[3]

While the exhaustion issue presented in this case may be debatable, Petitioner's substantive claim for relief is not. It is clear, (for reasons discussed below), that Petitioner's current habeas corpus claim cannot be sustained on the merits. Thus, the Court finds that it would be most propitious to sidestep the more complicated exhaustion issue, and proceed directly to the merits of Petitioner's due process claim. As our Court of Appeals has aptly observed, "[t]he simplest way to decide a case is often the best." Chambers v. Bowersox, 157 F.3d 560, 564, n. 4 (8th Cir. 1998), cert. denied, 527 U.S. 1029 (1999).

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act, ("AEDPA"), prescribes the

---

[3] To the extent that Petitioner might now be attempting to advance any new claim that was not included in the petition for review presented to the Minnesota Supreme Court, he clearly has not satisfied the exhaustion of state court remedies requirement. The only due process claim that could have been exhausted, and thus the only such claim that could be reviewable here, is the particular due process claim that Petitioner presented in his petition for further review.

standards that govern this Court's substantive review of Petitioner's current habeas corpus claim. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

<u>Id</u>. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

<u>Id</u>. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry

11

> should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). See also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Needless to say, a federal court is not allowed to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## IV. DISCUSSION

Petitioner contends that the Minnesota Supreme Court erred, and deprived him of his constitutional right to due process, by remanding his case to the trial judge to determine whether the evidence produced at trial showed that Petitioner "was subjectively aware of a substantial and unjustifiable risk that the videos he ordered from C.R.T. would involve minors." Mauer II, 741 N.W.2d at 116. According to Petitioner, his conviction should have been declared altogether void, and he should have been granted an entirely new trial to determine whether he was guilty under the Mauer II interpretation of Minn. Stat. § 617.247, subd. 4(a). Petitioner's argument is based primarily on two decisions by the United States Supreme Court – Shuttlesworth v. City of Birmingham, 382 U.S. 87 (1965), and Osborne v. Ohio, 495 U.S. 103 (1990).[4]

Shuttlesworth was brought to the Court by a defendant in an Alabama criminal case, who was found guilty of violating a city ordinance that broadly prohibited individuals from standing or loitering on a public sidewalk. By the time the case reached the Supreme Court, the Alabama Court of Appeals had already ruled, in a different case, that the ordinance should be narrowly construed, so that it would not inhibit conduct protected by the First Amendment.[5] The City argued that the defendant's conviction should survive under the narrowed construction of the ordinance at issue. That argument was rejected, because, at the time of the defendant's conviction, the trial court "was without guidance

---

[4] Petitioner has also cited Ashton v. Kentucky, 384 U.S. 195 (1966), which followed and reiterated some of the principles discussed in Shuttlesworth.

[5] The state court ruled that the statute "applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on." Shuttlesworth, 382 U.S. at 91.

13

from any state appellate court as to the meaning of the ordinance." Shuttlesworth, 382 U.S. at 92.

Because the trial court did not yet have the benefit of the narrowed construction of the ordinance, (which was required to make the ordinance constitutional), it was impossible to know whether the defendant would have been found guilty of violating that narrowed construction of the ordinance. The Supreme Court explained that –

> "The trial court made no findings of fact and rendered no opinion. For all that appears, that court may have found the petitioner guilty only by applying the literal – and unconstitutional – terms of the ordinance.... Because we are unable to say that the Alabama courts in this case did not judge the petitioner by an unconstitutional construction of the ordinance, the petitioner's conviction under [the ordinance] cannot stand."

Id. The judgment of conviction was reversed, and the case was remanded to the state courts "for further proceedings not inconsistent with" the Supreme Court's decision. Id. at 95.

In Osborne, the Supreme Court upheld an Ohio child pornography statute against a First Amendment challenge. The Court found that the statute, as narrowly construed by the Ohio Supreme Court, was not "overbroad," because it prescribed only conduct that was not constitutionally protected. 495 U.S. at 112-14. The defendant's conviction was reversed, however, because the jury in his case had not been fully instructed about all of the required elements of the charged offense under the newly-narrowed construction of the statute. The Supreme Court pointed out that –

> "According to the Ohio Supreme Court, in order to secure a conviction under... [the statute at issue], the State must prove both scienter and that the defendant possessed material depicting a lewd exhibition or a graphic focus on genitals. The jury in this case was not instructed that it could convict [the defendant] only for conduct that satisfied these requirements."

495 U.S. at 123. Because the jury did not determine whether the evidence would support a

conviction under the narrowed construction of the statute, the case was remanded for a new trial.

Based on Shuttlesworth and Osborne, Petitioner contends that he is constitutionally entitled to a new trial on the charges brought against him under Minn. Stat. § 617.247, subd. 4(a). It will be recalled that the Minnesota Supreme Court did not grant Petitioner a new trial, but simply remanded the case to the trial judge for further consideration of the previously presented evidence. Petitioner claims that this relief was constitutionally inadequate, and that an all new trial is required to determine whether there is sufficient evidence to prove each element of the charged offense beyond a reasonable doubt.

According to Petitioner, "a remand to the trial court to reconsider its findings on the record cannot satisfy the demands of due process elucidated by the United States Supreme Court." (Petitioner's Memorandum In Support Of Petition For Writ Of Habeas Corpus," [Docket No. 2], pp. 5-6.) Petitioner contends that the only way to determine whether there is sufficient proof of each element of the statute, as the statute was interpreted in Mauer II, is to grant him a new trial. The Court disagrees.

Neither Shuttlesworth nor Osborne holds that a new trial must always be conducted whenever a defendant has been convicted under a criminal statute that is subsequently construed to avoid a potential constitutional defect. In both of the cases cited by Petitioner, the Supreme Court set aside the defendant's conviction only because it was impossible to determine, based on the existing record, whether the factfinder at the trial court level, (either the judge or jury), would have found the defendant guilty under the new construction of the statute at issue.

The rule that was established in Shuttlesworth, and reiterated in Osborne, is that

"where a State Supreme Court narrows an unconstitutionally overbroad statute, <u>the State must ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written</u>." <u>Osborne</u>, 495 U.S. at 118 (emphasis added). The Supreme Court did <u>not</u> say in <u>Shuttlesworth</u> or in <u>Osborne</u> – or in any other case cited by Petitioner – that conducting a new trial is the <u>only</u> way to ensure that a defendant is guilty under an appellate court's later construction of the applicable statute. Therefore, it cannot be said that the Minnesota Supreme Court's remand order in Petitioner's case is directly "contrary to" the Supreme Court's rulings in <u>Shuttlesworth</u> and <u>Osborne</u>, for purposes of Section 2254(d)(1).

Furthermore, Petitioner has not shown that the Minnesota Supreme Court applied the apposite rule from <u>Shuttlesworth</u> and <u>Osborne</u> in an "objectively unreasonable" manner. The critical circumstance in both <u>Shuttlesworth</u> and <u>Osborne</u> was the <u>impossibility of knowing</u> whether the trier of fact would have found the defendant guilty under the subsequently narrowed construction of the statute at issue. In <u>Shuttlesworth</u>, the defendant's conviction was reversed "because it was not clear that the State had convicted the defendant under the ordinance as construed rather than as written." <u>Osborne</u>, 495 U.S. at 118. Likewise, in <u>Osborne</u>, the Court remanded the case for a new trial "to ensure that Osborne's conviction stemmed from a finding that the State had proved each of the elements" of the Ohio Supreme Court's construction of applicable statute. <u>Id</u>. at 126.

However, the critical findings that were missing in <u>Shuttlesworth</u> and <u>Osborne</u> are not missing here. The Minnesota Supreme Court effectively cured the defect identified in <u>Shuttlesworth</u> and <u>Osborne</u>, by remanding the case to the trial court for the express purpose of determining whether the State had proved each of the elements of Section

16

617.247, subd. 4(a), as the statute was construed in Mauer II.

In this case, unlike Shuttlesworth and Osborne, the record includes a specific determination, by the original trier of fact, that the State had sufficiently proven each element of the statutory offense, as construed by Minnesota Supreme Court. Moreover, the trial judge's Post-remand Order clearly shows that the trier of fact found that the State had indeed sufficiently proven each element of the charged offense as construed in Mauer II. The remand instructions provided by the Minnesota Supreme Court in Mauer II, combined with the trial judge's comprehensive Post-remand Order, clearly distinguish the present case from Shuttlesworth and Osborne. The remand instructions and the Post-remand Order eliminated the problematic uncertainty found in Shuttlesworth and Osborne.

Petitioner baldly asserts that "[a] memorandum filed by the trial court more than three years after the verdict and entry of judgment cannot support the validity of the conviction, where the original findings of the trial court do not establish that the defendant was convicted under the proper construction of the statute." (Petitioner's Reply, [Docket No. 20], p. 7.) However, Petitioner offers no legal authority to support this assertion. The Minnesota Supreme Court obviously concluded that, in this particular case, a new trial was not necessary, and that the requirements of Shuttlesworth and Osborne could be met by remanding the case to the trial court, with instructions to review the record and determine whether the elements of the statute, as construed, had been proven. Petitioner has not shown that this was an objectively unreasonable application of the apposite Supreme Court precedents.

There are two final points that warrant brief discussion. First, the Court recognizes that the course prescribed by Mauer II – remand for further review in light of the newly

17

construed statute – might not work in every case.  When the trier of fact is a jury, rather than the trial judge, it may not be feasible to remand the case for review of the evidence in light of a later interpretation of the applicable statute.  Thus, in <u>Osborne</u>, a case that was tried before a jury, the Supreme Court ordered a new trial.

However, in <u>Shuttlesworth</u>, a case tried before a judge, the Supreme Court did <u>not</u> order a new trial.  Instead, the Court merely remanded the case for further proceedings "not inconsistent with this opinion." 382 U.S. 94.  This more flexible remand directive apparently would have allowed the Alabama Court of Appeals to send the case back to the trial judge to consider whether the evidence submitted at trial would have supported a conviction under the narrowed construction of the applicable statute.  In other words, it appears that, under the Supreme Court's remand order, the Alabama state courts could have followed a course of action similar to that prescribed by <u>Mauer II</u>.

Petitioner contends that it "should make no difference" whether a defendant was tried before a judge or a jury.  (Petitioner's Memorandum In Support Of Petition For Writ Of Habeas Corpus, [Docket No. 2], p. 6.)  As a practical matter, however, it may indeed make a difference.  A remand for further review, as ordered by <u>Mauer II</u>, may be entirely satisfactory for a case tried before a judge, while that same course of action may not be feasible in a case that was originally tried before a jury.  However, the remand procedure prescribed by <u>Mauer II</u> is not unconstitutional, simply because it may not always be feasible.

Finally, Petitioner argues that he should have been granted a new trial so he could present new evidence and new defenses in opposition to the clarified interpretation of Minn.Stat. § 617.247, subd. 4(a).  This argument might warrant extensive consideration

18

under different circumstances, but not under the circumstances presented here. Petitioner has not identified <u>any</u> new evidence that he might have introduced at a new trial, and he has not suggested <u>any</u> new defense strategy that he might have tried to interpose at a new trial. There could, perhaps, be cases in which a new trial would be required to give a defendant an opportunity to present some new, specific, and relevant evidence in response to an appellate court's construction of a statute. However, Petitioner has not shown that this is such a case. He cannot be granted a writ of habeas corpus based on an argument that is supported only by pure speculation. <u>Larson v. United States</u>, 833 F.2d 758, 759 (8th Cir. 1987), <u>cert</u>. <u>denied</u>, 486 U.S. 1008 (1988).

## V. CONCLUSION

In <u>Mauer II</u>, the Minnesota Supreme Court properly recognized it could not affirm Petitioner's conviction based on the existing record, because it was unclear whether the trial judge would have found Petitioner guilty under the Supreme Court's narrowed construction of Minn.Stat. § 617.247, subd. 4(a). Therefore, the Supreme Court properly remanded the case to the trial judge to determine whether the evidence introduced at Petitioner's trial would support a conviction under the narrowed construction of the statute. The trial judge determined that the evidence would support a conviction under the narrowed construction of the statute, and he thoroughly explained why that was so. No further proof of Petitioner's guilt is required in this case.

If Petitioner had been tried before a jury, or if he were able to identify some relevant new evidence or new defense strategy that might have affected the outcome of the remand proceedings, then, perhaps, a new trial would have been apropos. However, neither of those circumstances is present here.

In sum, Petitioner has not shown that, under the particular circumstances of this case, a new trial was constitutionally mandated. He has not demonstrated that the Minnesota Supreme Court's remand order – calling for review of the evidence, but not a new trial – is contrary to, or an unreasonable application of, the apposite decisions of the United States Supreme Court. Thus, the Court concludes that Petitioner cannot be granted a writ of habeas corpus.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.


Dated: August 3, 2009        s/ *Jeanne J. Graham*
                             JEANNE J. GRAHAM
                             United States Magistrate Judge


### NOTICE

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 17, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.